IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| CHARLES MCDOWELL, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 15-4995 |
| | : | |
| MORAN FOODS, LLC d/b/a | : | |
| SAVE-A-LOT, LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                    **JUNE 13, 2016**

Presently before the Court is a Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by Defendant, Moran Foods, LLC d/b/a Save-A-Lot, LTD., and the Response in Opposition filed by Plaintiff, Charles McDowell. For the reasons set forth below, we grant Defendant's Motion.

## I.      BACKGROUND[1]

On March 30, 2015, Plaintiff filed a premises liability action in the Court of Common Pleas of Philadelphia County, which was subsequently removed to this Court by Defendant on September 4, 2015, based upon diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). The case arises out of a slip and fall on a piece of banana in aisle 6 of the Defendant's Save-A-Lot store ("Store") located in Philadelphia, Pennsylvania. (See Compl.)

---

[1]For the most part, we have recited the undisputed facts as they are set forth in Defendant's Memorandum of Law in Support of Motion for Summary Judgment. (See Def.'s Mem. Law Support Mot. for Summ. J. at 2-4.) Plaintiff's Response does not contest that the facts, as presented by Defendant, are undisputed. (See Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J.)

On January 13, 2014, Plaintiff was shopping at the Store located at 3801 Aramingo Avenue, Philadelphia, PA. (Def.'s Mem. Law Support Mot. for Summ. J. at 2; Ex. A (Compl.) ¶¶ 6, 7; Ex. C (Plaintiff's deposition transcript) 76:15-18; 77:6-7.) Plaintiff entered the Store at 2:01pm with his former girlfriend, Mary, and Mary's daughter, Crystal, and proceeded to walk up and down aisles 1 through 6 of the Store in a sequential fashion. (Id. Ex. C 78:24 through 80:9 and 81:12 through 82:2.) At 2:26 pm, Plaintiff entered aisle 6 from the back of the Store and proceeded to walk toward the front of the Store. (Id. Ex. C 82:3-15.) When Plaintiff was about a quarter of the way up aisle 6, he claims he was caused to slip and fall due to the presence of a piece of banana on the floor. (Id. Ex. C 85:14-22.)

When he got up off the floor, Plaintiff, for the first time, saw the piece of banana upon which he slipped. (Id. Ex. C 91:21 through 92:9.) He testified that a two-inch portion of the banana had been "smushed" by his foot slipping though it and the remaining inch and a half of the piece of banana was not "smushed." (Id. Ex. C 93:9 through 94:11.) Plaintiff testified that the piece of banana that was not "smushed" was light tannish or light yellow in color. (Id. Ex. C 94:12-24.) The part that was not "smushed" "looked like a regular banana." (Id. at 2-3 Ex. C 95:12-13.) The part that was not "smushed" was "still intact" and was not dirty. (Id. at 3 Ex. C 95:14-22.) In fact, Plaintiff testified that the part of the piece of banana he slipped on was not dirty and that just the inside was brown. (Id. Ex. C 100:24 through 101:3.) Plaintiff testified that he did not know how long the piece of banana was on the floor and conceded that "it could have been there seconds or minutes as far as [he knew]." (Id. Ex. C 95:23 through 96:5.) Plaintiff conceded that there were no shopping cart tracts through the piece of banana. (Id. Ex. C 101:14-16.)

Plaintiff further conceded that he had no idea where the piece of banana came from. (Id. Ex. C 98:2-6.) He acknowledged that the produce section of the Store is in aisle 1, which is the opposite side of the Store. (Id. Ex. C 98:14 through 99:4.) He had no idea if the piece of banana he slipped on came from a banana that was being sold in the Store or brought in by another customer. (Id. Ex. C 99:5-11.) Plaintiff agreed that he had no information or knowledge that any employee at Save-A-Lot was aware that there was a piece of banana in aisle 6 before he fell. (Id. Ex. C 100:10-15.) Similarly, Plaintiff had no reason to believe that an employee of Save-A-Lot dropped the piece of banana on the floor in aisle 6. (Id. Ex. C 17-20.)

Assistant Store Director, Joe Weisbrod, was working at the Store on the day of Plaintiff's incident. (Id. Ex. D (Weisbrod's deposition transcript) 5:14-19.) It was his first day on the job at the Store. (Id. Ex. D 5:16-17.) When he arrived at the Store that day, Mr. Weisbrod performed a "Commitment to Win," which is a routine walk through of the entire Store, with the manager. (Id. Ex. D 11:10 through 12:21.) This walk through was performed between approximately 1:00 pm and 1:30 pm on the day of Plaintiff's incident. (Id. Ex. D 15:13-14.) During this walk through, Mr. Weisbrod testified that he went through aisle 6 and there was no banana on the floor at that time. (Id. Ex. D 45:10-12.) In addition, Mr. Weisbrod testified that he and the manager followed another employee who did a "clean sweep" of the entire Store that was completed at 1:20 pm that day. (Id. at 4 Ex. D 16:6 through 18:17.) Mr. Weisbrod testified that there was no banana on the floor of aisle 6 at that time either. (Id. Ex. D 45:13-19.)

Regarding Plaintiff's incident, Mr. Weisbrod did not witness it, but was called to the scene shortly after it occurred by Plaintiff's girlfriend, Mary. (Id. Ex. D 28:17-21.) At his deposition, Mr. Weisbrod testified that Mary pointed out a piece of banana on the floor where Plaintiff fell. (Id. Ex. D 28:22 through 29:1.) Mr. Weisbrod observed that the piece of banana

3

was approximately an inch and a half, and that it was just the inside of the banana and that the peel was nowhere in sight.[2] (Id. Ex. D 31:23 through 32:5.) Mr. Weisbrod did not know how the fruit of the banana became separated from the banana peel and he did not see any bite marks. (Id. Ex. D 32:6-11.) Mr. Weisbrod testified that a part of the banana was "smushed" or "smeared a little bit." (Id. Ex. D 33:5-14.) The banana was yellow in color and the part that was smeared had a brown smudge through it. (Id. Ex. D 33:15-17.) Mr. Weisbrod testified that he did not know if the piece of banana that was on the floor in aisle 6 had been there for minutes or seconds. (Id. Ex. D 46:2-4.) Finally, Mr. Weisbrod testified that he had no knowledge or information, either from himself or any other employee, that anyone at the Store was aware of the presence of the piece of banana on the floor of aisle 6 before Plaintiff fell. (Id. Ex. D 50:12-16.)

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the

---

[2]Plaintiff points out that Mr. Weisbrod did not photograph the banana as required by Store policy. (Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 5.)

suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

### III.    DISCUSSION

Defendant moves for summary judgment arguing that the record is insufficient to show constructive notice of the hazardous condition that caused Plaintiff's fall, as required under Pennsylvania law. Pennsylvania law mandates that a claim for negligence requires proof of four elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the

interests of another."[3] Felix v. GMS, Zallie Holdings, Inc., 827 F. Supp. 2d 430, 435 (E.D. Pa. 2011) (quoting Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law)), aff'd, 501 F. App'x 131 (3d Cir. 2012).

### A. Duty of Care

As the owner and operator of the Store, Defendant was the possessor of the land on which Plaintiff sustained his injuries. See id. "Pennsylvania courts have adopted the Restatement (Second) approach to determining the duty owed by a possessor of land to a person on its land." Id. (citing Kirschbaum v. WRGSB Assocs., 243 F.3d 145, 152 (3d Cir. 2001); Carrender v. Fitterer, 469 A.2d 120, 123 (1983)). "Under this approach, '[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor [sic], licensee, or invitee.'" Id. (quoting Carrender, 469 A.2d at 123).

It is undisputed that Plaintiff was a business "invitee" into Defendant's Store. (Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 3; Def.'s Mem. Law Support Mot. for Summ. J. at 6; see Restatement (Second) of Torts § 332 (stating that an "invitee" includes "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land")). "'Possessors of land owe a duty to protect invitees from foreseeable harm.'" Felix, 827 F. Supp. 2d at 346 (quoting Carrender, 469 A.2d at 123). "The Restatement clarifies the possessor owes a duty only when the possessor 'knows or by the exercise of reasonable care would discover the condition, and

---

[3]There is no dispute that the substantive law of Pennsylvania applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 3; Def.'s Mem. Law Support Mot. for Summ. J. at 6.

should realize that it involves an unreasonable risk of harm to such invitee.'"[4] Id. (quoting Restatement (Second) of Torts § 343). "In other words, the possessor of the land must have 'actual or constructive notice' of the dangerous condition." Id. (quoting Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 723 (1997)) (stating that in order to establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition"). Thus, Defendant only owed such a duty to Plaintiff to the extent that it had "actual or constructive notice" of a dangerous condition in the Store.

### B. Notice

In this case, there is no evidence whatsoever that Defendant itself either caused the dangerous condition or that it had actual notice of the dangerous condition.[5] Thus, resolution of the issue of constructive notice is dispositive. Various factors are relevant to determining whether Defendant had constructive notice of the piece of banana's placement

---

[4] A possessor of land owes the following duty to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

[5] Plaintiff asserts that Defendant and its agents created the dangerous condition of the piece of banana being on the floor, but offers no evidence whatsoever. (See Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 6 ) (stating that "[t]he store stocks bananas. Outside bananas are not allowed into the store. Only store employees are allowed to dispose of 'over-ripe' or bad bananas"). We find that Plaintiff's assertion alone without any evidence at all is insufficient for a reasonable jury to conclude that Defendant caused the dangerous condition. See Felix, 827 F. Supp. 2d at 436 n.8 (denying plaintiff's argument that Defendant caused the spill stating that "[t]here is no evidence that Defendant-Canada Dry's pallet was leaking, or even capable of producing a clear liquid. Without more, the jury would be left to guesswork as to the cause of the spill").

on the floor of aisle 6, including: "'the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it.'" Id. at 437 (quoting Hagan v. Caldor Dep't Stores, Inc., No. 89–7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991)).

     Even though determining what constitutes constructive notice depends on the circumstances of each case, "'one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident.'" Id. (quoting Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)). "The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." Id. (quoting Restatement (Second) of Torts § 343). "Normally, the 'evaluation of these factors is within the province of the jury.'" Id. (quoting Hagan, 1991 WL 8429, at *4. "Nonetheless, where the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the Court." Id. (quoting Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (1952)). "State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." Regaolo v. Save-a-Lot, No. 13-5786, 2014 WL 4063361, at *4 (E.D. Pa. Aug. 15, 2014) (citations and quotation marks omitted).

**C.    Analysis of Facts**

Even viewing the facts in a light most favorable to Plaintiff, he cannot establish that Defendant knew or should have known that there was a risk of harm to himself on the date of the incident.  Plaintiff cannot establish where the piece of banana came from or how long it was present on the floor.  No one saw the piece of banana prior to Plaintiff's fall.  No one else slipped on the piece of banana, and there were no indications that someone else stepped on it or ran their shopping cart over it, such as trace marks or tracts.  Additionally, Plaintiff testified that the part of the piece of banana he slipped on that was still intact was not dirty whereas an accumulation of dirt may have suggested it was on the floor for a period of time. (Def.'s Mem. Law Support Mot. for Summ. J.; Ex. C 100:24 through 101:3.)

Plaintiff asserts that it is Defendant's duty to demonstrate that "enough time had not passed to establish notice," and that it has not made any arguments suggesting how long the banana, without the peel, takes to oxidize and change colors.  (Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 7.)  While it is Plaintiff's burden to establish constructive notice, we point out that evidence regarding the amount of time it takes for a banana to oxidize and change color may have been helpful in this case.  However, we further point out that Plaintiff testified that the piece of banana that was not "smushed" was light tannish or light yellow in color, and "looked like a regular banana." (Def.'s Mem. Law Support Mot. for Summ. J.; Ex. C 94:12-24; 95:12-13.)  Moreover, Mr. Weisbrod testified the banana was yellow in color and the part that was smeared had a brown smudge through it.  (Id. Ex. D 33:15-17; 45:20-24; 46:1.)  As Plaintiff states "the best method for demonstrating the state of the banana would have been a photograph of the banana;" however, the testimony of Plaintiff and Mr. Weisbrod, which coincide with one another, convey that the intact piece of

banana appeared to be fresh and had not gone bad at the time of Plaintiff's slip and fall.[6] (See Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 7-8.)

Notably, neither Plaintiff nor Defendant, specifically, Mr. Weisbrod, have any idea of how the piece of banana was on the floor or the amount of time that it remained there before Plaintiff's fall. As Plaintiff testified, he did not know how long the piece of banana was on the floor and he acknowledged that it could have been there for seconds or minutes as far as he knew. (Id. Ex. C 95:23 through 96:5.) Likewise, Mr. Weisbrod testified that he did not know if the piece of banana that was on the floor in aisle 6 had been there for seconds or minutes. (Id. Ex. D 46:2-4.) Although not dispositive of the issue of constructive notice, but, informative nonetheless, Mr. Weisbrod also testified that he and the Store manager did a walk through of the Store when he arrived around 1:00 pm, and an employee performed a walk through with Mr. Weisbrod and the Store manager walking together behind her around 1:20 pm, and that there was no banana on the floor of aisle 6 at either time. (Id. Ex. D 10:6 through 11:18; 16:6 through 18:17; 45:13-19.)

Plaintiff does not explain what caused the piece of banana to be on the floor, and does not provide any time frame that it remained there. Significantly, he neither says nor suggests how much time elapsed between the time the piece of banana was placed on the floor and the time that he slipped on it. Without any evidence, circumstantial or otherwise,

---

[6]Plaintiff argues that he should not be penalized for Mr. Weisbrod's failure to follow Store policy by not taking a photograph of the piece of banana. (Pl.'s Mem. Law Opp'n Def.'s Mot. for Summ. J. at 8.) Moreover, Plaintiff asserts that Mr. Weisbrod's failure to follow Store policy also shows that he did not adequately inspect the Store, and it highlights the fact that he had a lack of knowledge regarding the Store since it was his first day of work. (Id. at 5.) Additionally, Plaintiff asserts that the jury should be able to view the surveillance video of the entire accident, as well as footage leading up to it. (Id. at 8.) He asserts that the footage could establish actual or constructive notice, and that this Court cannot evaluate the existence or lack of notice without viewing the video. (Id. at 8.) The video footage has not been provided for our review; therefore, it is not part of our analysis.

of how long the piece of banana was on the floor when he slipped, Plaintiff fails to establish that Defendant had constructive notice of its placement on the floor. This is fatal to Plaintiff's claim because one of the most important factors to be taken into consideration regarding constructive notice is the time elapsing between the origin of the defect or hazardous condition and the accident. See Felix, 827 F. Supp. 2d at 437 (citing Neve, 771 A.2d at 791). Plaintiff fails to present any evidence suggesting how a reasonably prudent person exercising reasonable care could have remedied the hazardous condition of the piece of banana on the floor between the time that it was placed there and the time that he slipped on it. Under the circumstances of this case, a reasonable juror could not find any evidence of constructive notice, and would have to improperly resort to pure conjecture. Consequently, we find that Defendant is entitled to the grant of summary judgment in its favor. See Regaolo, 2014 WL 4063361, at *5 ("[C]ourts applying Pennsylvania law have consistently granted summary judgment to defendants where plaintiffs present insufficient evidence regarding the duration of time a spill or other hazard remained on the floor prior to an accident.");[7] see also Read, 2005 WL 2346112, at *4 ("In summary, plaintiff has failed

---

[7]Regaolo is a factually similar case to ours involving a slip and fall accident on grapes in an aisle of a Save-A-Lot store where summary judgment was granted in Defendant's favor due to Plaintiff leaving the question of how long the grapes were on the floor before he slipped on them as a matter of pure conjecture for the jury. See Regaolo, 2014 WL 4063361, at *7. The Regaolo court included the following string citation of cases, which are equally applicable to our case, supporting its statement that courts applying Pennsylvania law have consistently granted summary judgment in favor of defendants where plaintiffs present insufficient evidence regarding the duration of time a spill or other hazard remained on the floor prior to an accident:

> Henderson v. J.C. Penney Corp., Inc., No. 08–0177, 2009 WL 426180, at *4 (E.D. Pa. Feb. 20, 2009) (Jones, J.) (granting summary judgment to defendant where plaintiff "presented no evidence of how long the [clothing] tag was on the floor" prior to plaintiff's slip and fall); Craig v. Franklin Mills Assocs., 555 F. Supp. 2d 547, 554 (E.D. Pa. 2008) (granting summary judgment to defendant where plaintiff produced scant evidence of duration of spill); Cox v. Wal-Mart Stores E., L.P., No. 07-2391, 2008 WL 4072804, at *8 (E.D. Pa. Aug. 26, 2008) (summary judgment for defendant where "there [was] no evidence tending to show whether the oil spill had been on the Wal–Mart floor for seconds, minutes, hours or days"), aff'd, 350 F. App'x 741 (3d Cir. 2009); Read v. Sam's Club, No. 05–0170, 2005 WL 2346112, at *2 (E.D. Pa. Sept. 23, 2005) (Davis, J.) (granting summary judgment for defendant where plaintiff failed to produce evidence

to put forth any evidence as to the origin of the spill or as to how long the spill was on the floor prior to plaintiff's accident.  These evidentiary deficiencies are fatal to Plaintiff's claim under § 343 of the Restatement (Second) of Torts.")[8]

## IV.      CONCLUSION

The record is devoid of any evidence that Defendant itself either caused the dangerous condition or had actual notice of it.  Likewise, there is no evidence as to origin of the piece of banana on the floor or how long it laid on the floor prior to Plaintiff's accident.

---

as to origin of spill or how long spill was on floor prior to plaintiff's accident); Flocco v. Super Fresh Markets, Inc., No. 98–0902, 1998 WL 961971, at *2–3 (E.D. Pa. Dec. 29, 1998) (Waldman, J.) (granting summary judgment for defendant where plaintiff failed to produce evidence of time gravy was on floor, despite plaintiff's testimony that she did not hear breaking glass during half-hour they were shopping); Clark v. Fuchs, No. 93–1422, 1994 WL 13847, at *3 (E.D. Pa. Jan.14, 1994) (Buckwalter, J.) (granting summary judgment for defendant where plaintiff failed to present evidence to indicate how long paper she slipped on had been on floor), aff'd, 39 F.3d 1168 (3d Cir. 1994); Gales v. United States, 617 F. Supp. 42, 44 (W.D. Pa. 1985) (granting summary judgment for defendant where plaintiff had not established constructive notice despite evidence that employee moved through area two hours prior and observed no puddle on floor), aff'd, 791 F.2d 917 (3d Cir. 1986); Swift, 690 A.2d at 723 (granting summary judgment for defendant where plaintiffs did not present evidence as to how water got on floor or how long condition existed); Moultrey v. Great A & P Tea Co., 281 Pa. Super. 525, 422 A.2d 593, 596–97 (Pa. Super. 1980) (affirming grant of compulsory non-suit to defendant where plaintiff failed to present any evidence of how long cherry on which plaintiff slipped had been on floor, how it got there, and when area in which plaintiff fell had last been cleaned); Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 610 (Pa. 1965) (affirming dismissal of negligence suit where plaintiff slipped on grape in grocery store, finding plaintiff failed to produce any evidence of actual or constructive notice); Dimino v. WalMart Stores, Inc., 83 Pa. D. & C.4th 169, 177–78 (Monroe C.C.P. 2007) (granting summary judgment to defendant where a fact-finder would have to guess as to duration a grease spot was on the floor).

Id.

[8]Plaintiff asserts liability under § 344 of the Restatement (Second) of Torts.  (See Pl.'s Response Opp'n Def.'s Mot. for Summ. J. at 6.)  "To be liable under § 344, a defendant need only have knowledge of the likelihood of a third party's performance of an act leading to a harmful condition, as compared to knowledge of the actual harmful condition."  Read, 2005 WL 2346112, at *4; see also Rabutino v. Freedom State Realty Co., Inc., 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (finding that there is a "duty owed to any business invitee, namely, [a business must] take reasonable precaution against harmful third party conduct that might be reasonably anticipated").  Here, without evidence that the hazard was caused by the negligence of a third-party and that this third-party hazard was a regular occurrence, Plaintiff's claim under § 344 of the Restatement (Second) of Torts also fails as a matter of law.  See Read, 2005 WL 2346112, at *4 ("In summary, without evidence that the spill was caused by the negligence of a third party and that third-party spills were a frequent occurrence, plaintiff's negligence claim under § 344 of the Restatement (Second) of Torts fails as a matter of law.").

Therefore, Plaintiff has failed to come forward with evidence showing that Defendant had constructive notice of the piece of banana, and a reasonable juror could not find constructive notice of the hazard under the circumstances of this case. As a result, Defendant is entitled to summary judgment as a matter of law.

     An appropriate Order follows.